UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

LOUIS NEAL ZEIGENBEIN,  )
)
    Plaintiff,  )
)
    v.  )        Case No. 2:25-cv-00038-SRC
)
CENTURION et al.,  )
)
    Defendants.  )

### Memorandum and Order

On October 16, 2025, the Court denied without prejudice Louis Neal Zeigenbein's motion for leave to proceed *in forma pauperis*, doc. 2, because he did not submit an inmate-account statement that complied with 28 U.S.C. § 1915(a)(2). Doc. 9 at 2 (The Court cites to page numbers as assigned by CM/ECF.). The Court ordered Zeigenbein to, no later than December 1, 2025, either pay the full filing fee or file a renewed motion for leave to proceed *in forma pauperis*. *See id.* Zeigenbein has since paid the full $405 filing fee, so the Court now reviews his complaint under 28 U.S.C. § 1915A(b).

I. **Background**

Zeigenbein, a self-represented prisoner at the Farmington Correctional Center ("FCC"), sues Centurion Health Care, Inc., Nurse Practitioners Laurel Raines and Syndee Serr, Health Service Administrator Natalie Booth, Licensed Practicing Nurse Kaitlyn Huff, and Doctors Jerry Lovelace and Philip Tippen. Doc. 1 at 1–5. He sues the individual defendants in both their individual and official capacities, *id.*, and alleges that they acted under color of state law, doc. 1-1 at 3.

Zeigenbein alleges that Defendants misdiagnosed and mistreated his serious medical condition despite repeated complaints of dizziness and other symptoms occurring when he stood, walked, or otherwise exerted himself.  Doc. 1 at 7–11.  He states that a physician diagnosed him with thoracic-outlet syndrome at age 29.  *Id*. at 10.  Nevertheless, nurse practitioners at Moberly Correctional Center ("MCC"), his previous place of confinement, tested him five times for stroke, heart attack, abnormal sinus rhythm, and atrial fibrillation.  *Id*. at 8.  Nurse Huff told Zeigenbein that his bloodwork was normal and attributed swelling in his legs to edema (swelling from fluid trapped in body tissue).  *Id*. at 8–9.  According to Zeigenbein, Huff dismissed the swelling as "nothing to worry about" and told him "it's all in your head."  *Id*. at 8–9.  He also alleges that Huff refused to schedule him with other providers.  *Id*. at 9.

Zeigenbein states that he wrote to Administrator Booth several times about his symptoms and to request a cardiology referral.  *Id*. at 8.  Booth responded that his tests were normal and that officials would transfer him from MCC to FCC for treatment.  *Id*.

Zeigenbein alleges that Dr. Tippen relied on other providers' reports and did not properly evaluate him.  *Id.* at 9–10.  He acknowledges, however, that Dr. Tippen felt around his neck and ordered an ultrasound of his carotid arteries.  Doc. 1-1 at 7; doc. 1 at 9.  When Zeigenbein told Dr. Tippen that the test would show normal results if performed while he was lying down, Dr. Tippen responded, "[L]et's see what the test says!"  Doc. 1 at 10.  Zeigenbein asserts that both Dr. Tippen and Dr. Lovelace "oversee and approve all outcount appointments with different specialist[s]," *id.* at 9, but these doctors denied him tests outside the facility on numerous occasions, doc. 1-2 at 21.

In May 2024, after prison officials transferred Zeigenbein to FCC, Nurse Practitioner Shannon Toole diagnosed him with Marfan syndrome and orthostatic hypotension.  Doc. 1 at 7,

2

10–11.  According to Zeigenbein, Toole "expressed concern that the providers at MCC could not, nor did not, diagnose [him] as having Marfan Syndrome." *Id.* at 11.  He also asserts that Toole claimed that the providers at MCC gave him the wrong medication and stated that she would prescribe him the correct medication.  *Id.*  In January 2025, Toole told Zeigenbein that she would not conduct any more testing on him, except for bloodwork, echocardiogram, and checkups every six to twelve months.  *Id.*

Zeigenbein states that his eye doctor warned him that Marfan syndrome could impair his vision and possibly cause blindness in his left eye.  *Id.* at 11–12.  He reports loss of teeth and bone overgrowth in his jaw.  *Id.* at 12.  He further reports intermittent difficulty swallowing and hoarseness that resolves after he lies down for approximately 30 minutes.  *Id.*  Zeigenbein also alleges ongoing problems with his spine, feet, vascular system, mobility, and chest pain.  *Id.* at 12–13.

Zeigenbein asks the Court to order an evaluation by a licensed cardiologist along with any needed follow-up treatment.  *Id.* at 15.  He also seeks disciplinary action against Defendants, $15 million in compensatory damages, and $500,000 in punitive damages.  *Id.*  Finally, he seeks declaratory and injunctive relief.  Doc. 1-1 at 1–2.

## II.    Standard

Section 1915A requires the Court to screen each prisoner-filed complaint that "seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."  28 U.S.C. § 1915A(c).  The Court must dismiss a complaint if it "is frivolous, malicious, or fails to

3

state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct."  *Id*. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679 (citation omitted).  In doing so, the Court must "accept as true the facts alleged, but not legal conclusions."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented litigant's complaint under section 1915A, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Even so, self-represented plaintiffs must allege facts that, if true,

state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III.   Discussion

Zeigenbein asserts an Eighth Amendment deliberate-indifference claim and state-law claims of negligence and malpractice. Doc. 1 at 15–16. He also invokes "due process of law" under the Fourteenth Amendment. *Id.*; *see also id.* at 7. The Court addresses each claim in turn.

### A.   Individual-capacity Eighth Amendment claim

Zeigenbein sues the individual defendants in both their individual and official capacities, alleging that they provided constitutionally inadequate medical care. Doc. 1 at 1–5, 15. Section 1983 provides for a cause of action against persons who, acting under color of state law, deprive another of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment requires the state to provide medical care to incarcerated persons. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). The state cannot avoid its constitutional obligation to provide adequate medical treatment simply by contracting out prison medical care. *West*, 487 U.S. at 56. Because Missouri contracts with Centurion to provide prison medical services, the Court assumes for the purposes of this screening that Centurion and its employees acted under color of state law. *See id.* at 54–57.

To state an Eighth Amendment medical-care claim, a prisoner must allege facts showing (1) an objectively serious medical need and (2) that the defendant knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). Deliberate

indifference requires more than negligence or medical malpractice; it demands "grossly incompetent or inadequate care 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'"  *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (citation omitted).  It also requires "a showing of a mental state 'akin to criminal recklessness.'"  *Roberts*, 917 F.3d at 1042.  A prisoner's disagreement with a medical provider's judgment or course of treatment does not, by itself, establish a constitutional violation.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1241–42 (8th Cir. 1997).  The question, then, is whether the complaint alleges facts that plausibly show that any defendant acted with deliberate indifference to a serious medical need, in violation of the Eighth Amendment.  *See Iqbal*, 556 U.S. at 679.

### i.    Nurse Huff

Zeigenbein alleges that Huff found no issues with his bloodwork or other test results, declined to schedule further provider visits, told him he had slight edema, and dismissed his symptoms as "all in [his] head" and referred him to mental health treatment.  Doc. 1 at 8–9; *see also* doc. 1-1 at 7; doc. 1-2 at 19.  He also states that, when visiting Huff during "sick call," she would "act[] as if she [were] a doctor[.]"  Doc. 1-2 at 19.  Further, he alleges that, when he told Huff during these visits that he would fall over, get red in the face, and have chest pains while bending over, Huff would respond, "Don't bend over."  *Id.*  Even liberally construed,  many of these allegations show that Huff considered Zeigenbein's complaints, reviewed his lab work, and used medical judgment to determine that his condition warranted no further intervention.  At most, Zeigenbein's allegations reflect a dispute about the significance of his symptoms and the appropriate course of treatment, which alone does not support a deliberate-indifference claim.  *See Dulany*, 132 F.3d at 1241–42; *see also Na'im v. Beck*, 172 F.4th 1013, 1018 (8th Cir. 2026) ("Negligence or disagreement with treatment decisions does not rise to the level of a

constitutional violation.").  The Court therefore dismisses Zeigenbein's deliberate-indifference claim against Huff in her individual capacity.

### ii.      Nurse Practitioners Raines and Serr

Zeigenbein also sues Nurse Practitioners Raines and Serr.  He alleges that these nurse practitioners tested him on five occasions for "stroke, normal sinus rhythm, [atrial fibrillation], and heart attack," and told him that his results were normal.  Doc. 1 at 8; *see also* doc. 1-1 at 4–7; doc. 1-2 at 11–13, 15–16.  The Court cannot infer from these allegations that Raines and Serr knew of and disregarded a serious medical need.  Instead, his allegations show that they repeatedly conducted tests on Zeigenbein in response to his concerns.  Even though Zeigenbein may have requested that Raines and Serr conduct these tests on him while he was standing up, rather than sitting or lying down, their failure to do so does not constitute deliberate indifference. *Dulany*, 132 F.3d at 1241–42; *Na'im*, 172 F.4th at 1018.

Zeigenbein also asserts that another physician, Dr. Alfred Garcia, believed that Zeigenbein was experiencing congestive heart failure.  Doc. 1-1 at 4.  Raines disagreed, instead checking Zeigenbein for a stroke, despite knowing that he had a "62% mild regurgitation on [his] tricuspid valve."  *See* doc. 1-1 at 4; doc. 1-2 at 4.  But "showing that another physician might have ordered different tests and treatment does not show deliberate indifference." *Dulany*, 132 F.3d at 1242.  The Court therefore dismisses Zeigenbein's deliberate-indifference claims against Raines and Serr in their individual capacities.

### iii.      Doctors Tippen and Lovelace

Zeigenbein alleges that Dr. Tippen ordered and relied upon a supine carotid-artery study despite Zeigenbein's insistence that the results would be normal unless he stood or exerted himself.  Doc. 1 at 9–10.  Although Zeigenbein characterizes this as a failure to "properly assess"

7

his condition, *id.* at 9, his allegations describe a disagreement with Tippen's diagnostic judgment, which is not actionable under section 1983, *see Dulany*, 132 F.3d at 1241–42; *Na'im*, 172 F.4th at 1018.

Zeigenbein also alleges that Drs. Lovelace and Tippen oversee and approve outside referrals to different specialists.  Doc. 1 at 9.  He states that if providers do not write out their requests for outside referrals accurately, Drs. Lovelace and Tippen will deny their requests.  Doc. 1-2 at 21.  According to Zeigenbein, "[m]ost times these request[s] are denied."  Doc. 1 at 9.  And Drs. Lovelace and Tippen denied his requests for outside testing on numerous occasions.  Doc. 1-2 at 21.  Zeigenbein states that these denials prolong his treatment because they cause him "to have to go to sick call, then see a provider."  Doc. 1 at 9.  The denials also allegedly cause him "to suffer in silence causing [undue] stress, worry, and frustration to wait on an answer, or start the sick call process over after waiting several weeks."  Doc. 1-2 at 21.

Importantly, Zeigenbein does not allege that he was denied all treatment for his medical condition; he merely alleges that he was occasionally denied treatment by a specialist.  *See* doc. 1 at 9; doc. 1-2 at 21.  But "inmates have no constitutional right to receive a particular or requested course of treatment." *Dulany*, 132 F.3d at 1239.  Prison doctors, like Drs. Tippen and Lovelace, "remain free to exercise their independent medical judgment" about which courses of treatment are necessary.  *Id.*  Zeigenbein's allegations do not show "a refusal to provide essential care." *Redmond*, 999 F.3d at 1120.  Nor do they rise to the level of criminal recklessness necessary to state a claim for deliberate indifference.  *Roberts*, 917 F.3d at 1042.  The Court therefore dismisses Zeigenbein's deliberate-indifference claim against Drs. Lovelace and Tippen in their individual capacities.

8

### iv.    Administrator Booth

Finally, as to Administrator Booth, Zeigenbein alleges only that she responded to his inquiries and informed him that his test results were normal and that his providers were "Qualified Licensed Physicians." Doc. 1 at 8. Even liberally construed, these allegations do not plausibly suggest that Booth knew of and disregarded a substantial risk of serious harm. *See Roberts*, 917 F.3d at 1042; *Iqbal*, 556 U.S. at 679. Put differently, the Court cannot infer from these facts that Booth's conduct was so inappropriate as to evidence intentional maltreatment. *See Iqbal*, 556 U.S. at 679; *Redmond*, 999 F.3d at 1120. Therefore, the Court dismisses Zeigenbein's deliberate-indifference claim against Booth in her individual capacity.

### B.    Fourteenth Amendment due process claim

Zeigenbein invokes "due process of law" in the Relief section of his complaint. Doc. 1 at 15. But he alleges no facts—even liberally construed—that would support a Fourteenth Amendment due process claim. The Court will not read unstated facts into the complaint to create a constitutional violation. *See Stone*, 364 F.3d at 914–15. Therefore, the Court dismisses Zeigenbein's Fourteenth Amendment claim.

### C.    Centurion and official-capacity claims

Section 1983 also provides for a cause of action against a private corporation acting under color of law when the corporation maintains an unconstitutional policy, custom, or action. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). But section 1983 does not impose vicarious liability on a corporation solely based on its employees' actions. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993).

Here, Zeigenbein names each defendant in his or her official capacity and alleges that Centurion's staff denied his referrals and failed to properly diagnose his condition. Doc. 1 at 2–

9

11. He does not allege that Centurion itself maintained an unconstitutional policy, custom, or action. Even liberally construed, these allegations do not support a plausible inference that Centurion acted unconstitutionally. *See Sanders*, 984 F.2d at 975–76 (affirming dismissal where plaintiff failed to allege an unconstitutional policy or custom). The Court therefore dismisses Zeigenbein's deliberate-indifference claim against Centurion and the official-capacity claims against the individual defendants.

### D. State-law claims

Finally, Zeigenbein asserts state-law claims for negligence and malpractice. Doc. 1 at 15. But because the Court dismisses Zeigenbein's federal claims, it will not exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S 715, 726 (1966) (stating that when a federal court dismisses all federal claims before trial, it should also dismiss the state claims); *see also Sanders*, 984 F.2d at 977.

## IV. Conclusion

Accordingly, the Court dismisses this action without prejudice under 28 U.S.C. § 1915A(b). A separate order of dismissal accompanies this Memorandum and Order. The Court certifies that an appeal from this dismissal would not be taken in good faith.

So ordered this 26th day of May 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE